PEOPLE v HENDRICK

1. CRIMINAL LAW—HABITUAL CRIMINAL ACT—PRIOR CONVICTIONS—
   APPEAL AND ERROR.

   An appellant must first appeal the allegedly invalid underlying
   convictions and establish that they are invalid before he will be
   able to assail a sentence under the habitual criminal statute on
   the basis of unresolved claim of infirmity in other convictions.

2. CRIMINAL LAW—HABITUAL CRIMINAL ACT—PRIOR CONVICTIONS—
   VALID CONVICTIONS.

   An attack on the validity of a conviction as a habitual criminal
   on the basis that the prior convictions were allegedly invalid
   must fail in the absence of any judicial determination of the
   invalidity of the prior convictions.

3. CRIMINAL LAW—HABITUAL CRIMINAL ACT—PRIOR CONVICTIONS—
   PUNISHMENT.

   The habitual criminal statute does not purport to set a punish-
   ment for any proscribed activity; its function is to permit the
   augmentation of punishment of another crime after conviction.

4. INDICTMENT AND INFORMATION—HABITUAL CRIMINAL ACT—SUPPLE-
   MENTAL INFORMATION—PRIOR CONVICTIONS.

   The prosecutor has discretion to file a supplemental information
   under the habitual criminal act after conviction and is not
   limited to filing such supplemental information prior to convic-
   tion of a current charge where he had knowledge of the
   previous conviction.

Appeal from St. Joseph, Robert E. A. Boyle, J.
Submitted Division 3 April 6, 1973, at Grand

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 39 Am Jur 2d, Habitual Criminals and Subsequent Offenders
　§§ 31, 32.
[3] 21 Am Jur 2d, Criminal Law § 585.
[4] 39 Am Jur 2d, Habitual Criminals and Subsequent Offenders
　§§ 20, 21.

Rapids. (Docket No. 14276.) Decided March 26, 1974.

Grant H. Hendrick was convicted on his plea of guilty of breaking and entering with intent to commit larceny, and after trial of assault with intent to do great bodily harm less than murder. After sentencing, supplemental informations were filed and defendant was convicted of being a habitual criminal. Defendant appeals his conviction as a habitual criminal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *James Noecker,* Prosecuting Attorney, for the people.

*Michael C. Moran,* Assistant State Appellate Defender, for defendant.

Before: HOLBROOK, P. J., and T. M. BURNS and CHURCHILL,* JJ.

T. M. Burns, J. The defendant, Grant H. Hendrick, was arrested on October 20, 1971, and charged with breaking and entering with intent to commit larceny, MCLA 750.110; MSA 28.305, and assault with intent to do great bodily harm less than murder, MCLA 750.84; MSA 28.279. Defendant pled guilty to the breaking and entering charge on October 21, 1971. He pled not guilty to assault with intent to do great bodily harm less than murder and, after trial, was found guilty of that charge. On January 10, 1972, he was sentenced to a term of 9-1/2 to 10 years imprisonment on each of the foregoing charges.

Immediately after defendant was sentenced on

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

January 10, 1972, the people filed a supplemental information charging defendant with being a habitual criminal pursuant to MCLA 769.12; MSA 28.1084 which provides in pertinent part:

"A person who after having been 3 times convicted within this state, of felonies or attempts to commit felonies, or under the law of any other state, government or country, of crimes which if committed within this state would be felonious, commits any felony within this state is punishable upon conviction as follows: If the felony for which such offender is tried is such that upon a first conviction thereof the offender might be imprisoned in a state prison for a maximum term of 5 years or more, or for life, then such person may be sentenced upon conviction of such fourth or subsequent offense to imprisonment in a state prison for the term of his natural life or for any lesser term in the discretion of the court * * * ."

The supplemental information and an amended supplemental information charged that the defendant had been convicted of the following felonies: (1) second-degree burglary in the State of Washington on January 21, 1966, (2) robbery in the first degree in the State of North Dakota on September 26, 1966, (3) escape from prison in the State of North Dakota on October 1, 1968, (4) breaking and entering an unoccupied building with intent to commit a larceny in the State of Michigan on October 21, 1971, and (5) assault with intent to do great bodily harm less than murder in Michigan on December 20, 1971.

Defendant was arraigned on the supplemental and amended supplemental informations and stood mute. The court entered a plea of not guilty on behalf of defendant.

Prior to trial, defense counsel moved to quash the supplemental information on the ground that

defendant had been denied the benefit of a preliminary examination. The trial court denied the motion to quash, finding that the habitual criminal act did not require a preliminary examination.

Once again, prior to trial, defense counsel moved to quash the information, this time on the grounds that since the prosecutor was aware of the defendant's prior convictions before the guilty plea on the breaking and entering charge and before trial on the assault charge in December of 1971, the supplemental information was required by statute to be filed before trial on the assault charge. This motion to quash was also denied by the trial court.

A jury trial was held on the habitual criminal charge in February of 1972. The jury returned a verdict of guilty and defendant was sentenced to life imprisonment. Defendant filed a motion for a new trial which was denied by the trial court.

Defendant claims that his conviction as a habitual criminal under the provisions of MCLA 769.12; MSA 28.1084, *supra,* was invalid by reason of the fact that the court improperly considered certain of his previous convictions as the basis for his conviction as a habitual offender.

On October 21, 1971, defendant pleaded guilty in St. Joseph County, Michigan, to the offense of breaking and entering. Defendant argues that the plea transcript contains no indication that defendant was therein advised of the constitutional rights which were waived by his plea of guilty as required by *Boykin v Alabama,* 395 US 238; 89 S Ct 1709; 23 L Ed 2d 274 (1969) and *People v Jaworski,* 387 Mich 21; 194 NW2d 868 (1972) and that, therefore, the plea-based conviction was improperly considered by the court as part of the basis for his conviction as a habitual offender under the provisions of MCLA 769.12; MSA 28.1084.

On January 21, 1966, defendant pleaded guilty in King County Superior Court in the State of Washington to burglary in the second degree. Defendant contends that this plea did not comply with guilty plea standards as set forth by either the Supreme Court of the State of Washington or the Supreme Court of the State of Michigan and that, therefore, this plea-based conviction was also improperly considered as a basis for his conviction as a habitual offender.

On September 26, 1966, defendant pleaded guilty in Stutsman District Court in the State of North Dakota to armed assault with intent to rob. Defendant claims that the transcript of that plea contains no factual basis for the plea which was required under GCR 1963, 785, which was effective in Michigan at the time of the plea and that, therefore, this plea-based conviction should not have been considered as a basis for his conviction as a habitual offender.

As authority for these arguments, defendant relies on the decisions of the United States Supreme Court in *United States v Tucker,* 404 US 443; 92 S Ct 589; 30 L Ed 2d 592 (1972) and *Burgett v Texas,* 389 US 109; 88 S Ct 258; 19 L Ed 2d 319 (1967).

In *Tucker,* defendant was convicted in United States District Court for the Northern District of California of armed bank robbery. At the sentencing proceedings following conviction the court gave explicit attention to Tucker's three previous felony convictions and imposed the maximum term authorized by the applicable Federal statute. Several years later it was conclusively determined in a collateral proceeding in a California trial court that two of the three prior convictions which the Federal district court had explicitly considered in

imposing the maximum sentence were constitutionally invalid by reason of the fact that Tucker had not been advised of his right to assistance of counsel and did not understandingly waive assistance of counsel. Tucker moved to set aside the sentence in the same Federal district court which had imposed the maximum. The motion was denied by the Federal court and on appeal to the United States Court of Appeals, that Court remanded the cause for resentencing without consideration of the invalid prior convictions. The United States Supreme Court affirmed upon a holding that:

"We agree with the Court of Appeals that the answer to this question must be 'yes.' For if the trial judge in 1953 had been aware of the constitutional infirmity of two of the previous convictions, the factual circumstances of the respondent's background would have appeared in a dramatically different light at the sentencing proceeding. Instead of confronting a defendant who had been legally convicted of three previous felonies, the judge would then have been dealing with a man who, beginning at age 17, had been unconstitutionally imprisoned for more than ten years, including five and one-half years on a chain gang. We cannot agree with the Government that a re-evaluation of the respondent's sentence by the District Court even at this late date will be either 'artificial' or 'unrealistic.'

"The *Gideon* case established an unequivocal rule 'making it unconstitutional to try a person for a felony in a state court unless he had a lawyer or had validly waived one.' *Burgett v Texas,* 389 US 109, 114, 19 L Ed 2d 319, 324, 88 S Ct 258. In *Burgett* we said that '[t]o permit a conviction obtained in violation of *Gideon v Wainwright* to be used against a person either to support guilt or enhance punishment for another offense * * * is to erode the principle of that case.' Id., at 115, 19 L Ed 2d at 324. Erosion of the *Gideon* principle can be prevented here only by affirming the judgment of the

Court of Appeals remanding this case to the trial court for reconsideration of the respondent's sentence.

"The judgment is affirmed."

There are a number of distinctions between *Tucker* and the case at bar, the most important of these is the fact that in *Tucker* as stated by the United States Supreme Court at 444–445:

"it was conclusively determined that the respondent's 1938 conviction in Florida and his 1946 conviction in Louisiana were constitutionally invalid".

There has been no such determination in the instant case. So far as is indicated by the record before this Court, the convictions herein being considered have never been appealed and, in addition, have never been the subject of a collateral attack. In a very recent decision, *People v Gavin,* 50 Mich App 743; 213 NW2d 758 (1973), this Court relying on two recent United States Court of Appeals decisions, *Brown v United States,* 483 F2d 116 (CA 4, 1973) and *Young v United States,* 485 F2d 292 (CA 8, 1973), held that before an appellant will be able to assail a sentence on the basis of unresolved claim of infirmity in other convictions, the appellant must first appeal the allegedly invalid underlying convictions. This Court held that *Tucker* would then apply only after the appellant had had the prior convictions ruled invalid. The Court said:

"We therefore hold that, before this Court will grant relief in a *Tucker* petition, the appellant must first establish in separate post-conviction actions that the underlying convictions are invalid. In the instant case this required foundation has not been laid, the constitutional status of defendant's prior convictions not having been previously determined by an appellate process."

It is clear, therefore, that in the absence of any judicial determination of the invalidity of defendant's prior convictions, his attack on the validity of his conviction as a habitual offender must fail.

Defendant, relying on the decisions of the United States Supreme Court in *Robinson v California,* 370 US 660; 82 S Ct 1417; 8 L Ed 2d 758 (1962), argues that the Michigan habitual criminal statute is unconstitutional in that it inflicts cruel and unusual punishment upon those who have the status of a recidivist contrary to the Eighth Amendment of the United States Constitution. This argument, while ingenious, must fail for a very simple reason. *Robinson* held that it was improper to imprison someone merely because of his status as a drug addict. The habitual criminal statute does not purport to set a punishment for any proscribed activity. Rather its function is to permit the augmentation of punishment of another crime after conviction. As the Michigan Supreme Court said in *People v Palm,* 245 Mich 396, 401; 223 NW 67 (1929): .

"Such laws evidence a desire on the part of the people of the State to protect themselves from the acts of habitual violators of law. Such persons, by the repeated commissions of felonies, have shown that they are a menace to society, unfit for liberty, and should be deprived thereof. The punishment in such cases is increased because of the apparent persistence in the commission of crime by the person convicted and his indifference to the laws deemed necessary for the protection of the people and their property. Experience teaches that the fear of severe punishment is more likely to rid the State of this type of professional criminals than any effort which may be made looking to their reformation."

That language was quoted with approval by this

Court in *People v Shastal,* 26 Mich App 347; 182 NW2d 638 (1970).

Thus, the habitual criminal statute merely makes more severe the punishment of a felon after conviction and does not come within the purview of *Robinson v California, supra.* Cases in virtually all jurisdictions have consistently upheld the constitutionality of such statutes. Defendant's argument is without merit.

In addition the defendant relying on *In re Brazel,* 293 Mich 632; 292 NW 664 (1940); *People v Hatt,* 384 Mich 302; 181 NW2d 912 (1970); and *People v Stratton,* 13 Mich App 350; 164 NW2d 555 (1968), asserts that since the prosecutor was aware of his prior felony convictions, it was reversible error for the prosecution to delay filing the habitual criminal information until after conviction on the current charge.

Defendant's reliance in the *Brazel, Hatt* and *Stratton* line of cases is misplaced. Both in *Brazel* and *Stratton,* the specific question under consideration was whether it was permissible for the prosecution to file an information charging the defendants as habitual criminals prior to conviction on the current charge. It was held in each case that the prosecution could file a habitual criminal information either prior to or concurrent with the pending charge. In *Hatt* the issue before the court was whether an accused who is charged as a habitual criminal is entitled to have his guilt or innocence on the charge tried before a jury that had not determined the accused's guilt on the current charge. Citing *Stratton* with approval, it was held that the jury which found the accused guilty on the current charge was not barred from determining the defendant's guilt on the habitual criminal charge. Since neither *Brazel, Hatt* nor

*Stratton* reached the issue posed by the defendant in the present case, these cases are not in point and are thus not controlling on the question.

This Court, however, in *People v Marshall,* 41 Mich App 66; 199 NW2d 521 (1972), recently considered the question of when an habitual criminal information is to be filed. After analyzing and distinguishing the *Brazel* and *Stratton* cases and although reversing the defendant's conviction on other grounds, we concluded:

"Clearly, the prosecutor has discretion to file a supplemental information under the habitual criminal act after conviction, and is not limited to filing such supplemental information prior to conviction of a current charge, where he has knowledge of the previous conviction." 41 Mich App 66, 72–73.

Therefore, defendant's contention that the prosecution having knowledge of his prior felony convictions erred by filing the habitual criminal information after conviction in the current charge is likewise without merit.

Affirmed.

All concurred.